1   David N. McDevitt (030761)
Thompson Consumer Law Group, PLLC
2   5235 E. Southern Ave., D106-618
Mesa, AZ 85206
3   602-845-5969 phone
4   866-317-2674 facsimile
dmcdevitt@consumerlawinfo.com
5   Attorneys for Ms. Ogletree

6

7                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF ARIZONA
8

9   Marsha Ogletree, *on behalf of*          ) Case No. 2:16-cv-03881-JJT
    *herself and all others similarly*        )
10  *situated*                                )
                                              ) **JOINT MOTION FOR FINAL**
11                                            ) **APPROVAL ORDER AND**
    Plaintiff,                                ) **JUDGMENT APPROVING CLASS**
12                                            ) **ACTION SETTLEMENT**
         vs.                                  )
13                                            )
                                              )
14  Café Valley, Inc.,                        )
                                              )
15                                            )
    Defendant.                                )
16  _____

17        Plaintiff Marsha Ogletree ("Plaintiff") and Defendant Café Valley, Inc. ("Café

18  Valley") (together "the Parties"), by and through their respective counsel, hereby jointly

19
    move the Court to enter an order that finally certifies the class for settlement purposes
20
21  and gives final approval of the class settlement arising under the Fair Credit Reporting

22  Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.  The class settlement was preliminarily

23  approved on November 6, 2017, *see* Doc. 39, and a Final Fairness Hearing will be
24
25  held on January 30, 2018 at 1:30 p.m.  *See* Doc. 41.

26        In support of their request, the Parties respectfully show the following:

27

28

Joint Motion for Class Settlement - 1

## I.      SUMMARY

If finally approved, this FCRA settlement will result in roughly 2,339 members of the Disclosure Class receiving $20 in compensation for their claims under 15 U.S.C. § 1681b(b)(2) and roughly 109 members of the Adverse Action Class receiving an additional $200 in compensation for their claims under 15 U.S.C. § 1681b(b)(3).

The terms of the settlement are fair, reasonable, and adequate. The claims of the putative Adverse Action Class members have been—and will continue to be—fairly and reasonably processed.  If the action proceeded on the merits, there is a risk of no recovery, in light of the requirement under FCRA that a violation must be "willful" to recover statutory damages.  Even where a willful violation is proven, plaintiffs are only guaranteed a recovery of $100 and, in most cases, will have their recovery limited to $1,000.  After individual notice was attempted to all class members and successfully delivered to over 90% of them, the Parties have received no objections or requests for exclusion.  No other class member has initiated his or her own action against Café Valley for the same course of conduct or claims.

The Class Service Representative Award of $5,000 is reasonable in light of the time and risk Plaintiff took to pursue relief for the other class members.  Plaintiff's counsel's request for attorneys' fees—to be sought through a separate motion and which Café Valley has agreed not to oppose, if seeking less than $60,000—will be subject to the Court's independent determination of reasonableness.  The Parties recommend and request that the class settlement be granted final approval.

## II.    RELEVANT BACKGROUND

### A.    The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

The FCRA imposes special requirements when using a "consumer report" about an individual to evaluate his or her fitness for employment.  Before obtaining a consumer report for employment purposes, a person must make a clear and conspicuous disclosure to the consumer "in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).  Before taking "adverse employment action" against a consumer based on the content of their report, one must provide the consumer with a copy of it and a notice of their rights under the FCRA.  15 U.S.C. § 1681b(b)(3).

"The FCRA provides a private right of action against those who violate its statutory requirements in procuring and using consumer reports."  *Syed v. M-I, LLC,* 853 F.3d 492, 497 (9th Cir. 2017), *cert. denied*, No. 16-1524, 2017 WL 2671483 (U.S. Nov. 13, 2017).  "The affected consumer is entitled to actual damages for a negligent violation."  *Id.*  "For a willful violation, however, a consumer may recover statutory damages ranging from $100 to $1,000, punitive damages, and attorney's fees and costs."  *Id.*   The Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71.

### B.    Relevant Facts Pertaining to Plaintiff

In April 2016, Plaintiff applied for employment with Café Valley.  Doc. 34 at 6.  As part of the hiring process, Plaintiff signed a document titled "FCRA Disclosure and Acknowledgement." *Id*.; *see also* Exhibit A to Declaration of Class Counsel in Support of

1
2
3
4

Final Approval ("Declaration"), submitted contemporaneously herewith.  After Plaintiff was hired, Café Valley ordered a criminal background check about Plaintiff from Universal Background Screening, Inc. ("Universal"), in reliance upon that form.  Doc. 34 at 6.

5
6
7
8
9
10

Plaintiff began working for Café Valley on April 20, 2016. *Id*. at 6-7.  On April 25, 2016, Universal provided Plaintiff's background check to Café Valley.  *Id*. at 7.  Upon receiving it, Café Valley made the decision to terminate Plaintiff.  *Id*.  Plaintiff was not told that the decision was subject to dispute or change, and she received no additional communication from Café Valley or Universal.  *Id*.

11

### C.     Procedural Background

12
13
14
15
16
17
18
19
20
21
22
23

On November 8, 2016, Plaintiff brought this putative class action alleging a single count against Café Valley under § 1681b(b)(3) of the FCRA.  Doc. 1 at 9-11. Café Valley filed its answer on January 17, 2017.  Doc. 10.  On March 3, 2017, the Court entered a case management order, providing the Parties with a requested opportunity to attempt an early resolution of the action.  Doc. 23 at 2-3.  During their negotiations, Plaintiff served a Rule 45 subpoena on Universal, Doc. 25, and amended her complaint to add a claim under § 1681b(b)(2)(A) and a corresponding class (i.e., the Disclosure Class). *See* Doc. 27 at ¶¶47, 72.  On July 28, 2017, Café Valley filed its answer to the amended complaint. Doc. 29.

24
25
26
27
28

On August 29, 2017, the Parties submitted a joint notice to the Court that they had reached a settlement agreement in principle that would resolve the claims of the putative classes.  Doc. 30.  The Court granted the Parties' motion to stay the remaining deadlines and, at their request, ordered them to submit their joint motion for

conditional class certification and preliminary approval of class settlement by October 6, 2017. On October 4, 2017, the Parties jointly sought a 10-day extension of this deadline, Doc. 32, which the Court provided. Doc. 33.

On October 16, 2017, the Parties moved for conditional class certification and preliminary approval of the class settlement agreement. *See* Doc. 34 (as amended at Doc. 38-1). On November 6, 2017, the Court granted preliminary approval of the settlement. Doc. 39. Therein, it directed that notice be sent to the Class by November 20, 2017, *id*. at ¶ 9, ordered that the Class respond by December 5, 2017, *id*. at ¶¶ 10-12, and set a final fairness hearing on December 19, 2017, *id*. at ¶ 13.

The Parties requested a continuance of the Final Fairness Hearing, Doc. 40, which the Court reset to January 30, 2018 at 1:30 p.m. Doc. 41. In addition, the Parties requested and received a modification to the preliminary approval order, allowing Class Counsel until December 5, 2017 to mail notice to the Class and for the Class to have until January 16, 2018 to respond. Doc. 42; Doc. 43.

### D.   The Settlement

The Parties' settlement agreement calls for Café Valley to pay $20 per person in the Disclosure Class and an additional $200 to those who claim membership in the Adverse Action Class, subject to Café Valley's right to challenge such claims. The agreement also provides for Café Valley to pay a Class Service Representative Award to Plaintiff, Class Counsel's reasonable attorney's fees and litigation expenses, subject to the Court's approval, and Class Counsel's cost of distributing notice and mailing settlement checks to the class members.

1

### 1.    Disclosure Class Members

2

3

All individuals about whom Café Valley requested a background check from

4

Universal, within the relevant time frame, are members of the Disclosure Class.  The

5

settlement calls for Café Valley to pay $20 to each individual identified by an

6

appropriate search of Universal's platform *and* for whom a valid address is available.

7

### 2.    Adverse Action Class Members

8

9

Café Valley conceded the existence of only 21 individuals who met the class

10

definition and contended that its liberal hiring policies meant that adverse action

11

would not have occurred frequently (i.e., even an individual with negative entries

12

reported about him by Universal might still have been hired).  For this reason, it

13

14

contended that a negative entry in a claimant's report would be a poor and over-

15

inclusive indicator of membership in the Adverse Action Class.

16

To avoid the use of arbitrary criteria, all members of the Disclosure Class were

17

permitted to submit claims that they also belong in the Adverse Action Class.  To

18

19

address Café Valley's concern over the receipt of a wave of ineligible claims, the

20

settlement places a $50,000 limit on the total amount that Café Valley is required to

21

pay to the Adverse Action Class and permits Café Valley to challenge claims.  Adverse

22

23

Action Class members will receive $200, unless the class exceeds 250, in which case

24

they receive a pro-rata share of $50,000.

25

### 3.    Compensation to the Representatives

26

27

The agreement also provides for a Class Service Representative Award in the

28

amount of $5,000 to be paid to Plaintiff (in addition to her $220 recovery as a member

of both the Disclosure and Adverse Action Classes) Café Valley has agreed not to contest Class Counsel's petition for attorney's fees and litigation-related expenses, so long as it does not request over $60,000.   In addition, Café Valley has agreed to reimburse Class Counsel for the actual cost of claims administration, including mailing notice and settlement checks (i.e., non-litigation related expenses).

### E.      Notice and Response from the Class

Following the Court's preliminary approval of the proposed class settlement, Café Valley sent Class Counsel a list containing 2,649 entries, each of which reflected a background check run by Universal on its behalf between November 8, 2014 and February 6, 2017.  *See* Declaration at ¶ 5.  As contemplated by the agreement, Class Counsel was given access to Café Valley's Universal account to confirm that this list was comprehensive.  *Id.* at ¶ 6.  After duplicates and "dummy" accounts were removed, the Disclosure Class was determined to consist of 2,572 individuals.  *Id.* at ¶¶ 7-8.

A large envelope, containing the 8-page notice, a claim form, and a self-addressed return envelope with prepaid postage, was mailed to all Disclosure Class members by December 5, 2017. *Id.* at ¶¶ 9-10.  The initial mailing resulted in 574 notices being returned as undeliverable.  *Id.* at ¶ 11.  Twenty-eight (28) notices were returned with new addresses, to which notices were subsequently delivered—23 of them successfully.  *Id.* at ¶ 12.  The remaining 546 addresses were sent to a national-change-of-address ("NCOA") vendor.  *Id.* at ¶ 13. The vendor sent back a list containing 315 addresses.  *Id.*   In some cases, the addresses were entirely new.  *Id.*   In many other cases, there were slight corrections to the

mailing address, which may have been caused by human input error and resulted in a non-delivery. A subsequent notice was sent to these 315 addresses. *Id*. at ¶ 14.

Where no forwarding address was provided and no better or corrected address was available from the NCOA vendor, Class Counsel searched in a commercial database for addresses for the remaining 231 class members. *Id*. at ¶ 15. This search yielded an additional 106 addresses, to which notices were re-sent. *Id*. at ¶¶ 15-16. After sending these additional 421 notices, Class Counsel received an additional 103 notices returned. *Id*. at ¶ 16. In sum, individual notice was achieved for 2,339 of the 2,572 members—or nearly 91% of the Disclosure Class. *Id*. at ¶¶ 17-18. The Disclosure Class was therefore given adequate notice. *See Khoday v. Symantec Corp*., No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *7 (D. Minn. Apr. 5, 2016) (finding notice sufficient where over 92% of the class "did not have their notice subsequently returned as undeliverable"), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp*., 855 F.3d 860 (8th Cir. 2017).

In response to the notice campaign, Class Counsel received claims from 186 individuals. Declaration at ¶ 23. Five claimants were excluded by Class Counsel, with their assent, after determining they did not belong in the Adverse Action Class. *Id*. at ¶¶ 24-25. The other 181 claims were submitted to Café Valley. *Id*. at ¶ 26. Because more than 100 claims were submitted, Café Valley has a contractual right under the settlement agreement to assert challenges, and it has exercised this right. *Id*. at ¶¶ 27-28.

Café Valley accepts the membership of any claimant that worked for it for 20 days or fewer, but it challenges the claims of six individuals who did not sign the form

or have a background check run about them and 84 individuals primarily based on an absence of any adverse entries on their Universal reports.  *Id*. at ¶¶ 29-30.  Class Counsel has reviewed the Universal reports for these 84 individuals and concedes they do not contain adverse entries that would support the membership claim.  *Id*. at ¶ 31.

By not challenging the other 90 claims, Café Valley concedes their membership. *Id*. at ¶ 35; Doc. 38-1 at 13 (if there is no challenge and fewer than 250 total potential class members, Class Counsel has no duty to further investigate).  It previously conceded the membership of 21 other individuals (including Plaintiff), however two of these individuals submitted claims that were not challenged and counted as part of the 90 figure above.  *Id*.  Therefore, the Adverse Action Class currently consists of 109 members.  Declaration at ¶ 35.  This figure could still grow, though the Parties do not anticipate it to grow by more than a few.  *Id*. at ¶¶ 32-34, 36-37; *see also* Section I.F, *infra*.

At the time that this motion was filed, the Parties have not received any objections or requests for exclusion from any class members, either formal or informal.  Declaration at ¶¶ 41-42.  No objections or requests for exclusion have been filed or noted by the Clerk electronically.  *See* Docket Sheet, *generally*.

### F.    Additional Steps Necessary to Complete Settlement

Under the settlement agreement, the 84 claimants, whose membership in the Adverse Action Class Café Valley has challenged, are entitled to receive written notice and an opportunity to provide evidence to support their claim.  Doc. 38-1 at 13. Because there was not enough time to mail a notification to these 84 claimants and

obtain a meaningful response from them before the Final Fairness Hearing, Class Counsel has not yet provided them with this opportunity, but will do so upon final approval or as otherwise directed by the Court.  Declaration at ¶¶ 32-34.

The Parties do not expect that the size of the Adverse Action Class will grow significantly, as the number of claims and returned notices has slowly significantly in the days leading up to the Final Fairness Hearing.  *Id.* at ¶ 37.  Moreover, Café Valley's challenges are likely against individuals who did not intend to claim membership.  *Id.* at ¶ 33.  The number of challenged claims that are legitimately disputed is expected to be low and unlikely to necessitate a request for a Special Master.  *Id.* at ¶ 34.  Notwithstanding, the Parties still need to finish processing these claims.

If final approval is granted, in accordance with the settlement agreement, Café Valley will pay Class Counsel the sum of: (i) $46,780, representing $20 for each of the 2,339 Disclosure Class members, *id.* at ¶¶ 21-22; (ii) $21,800, representing $200 for each of the 109 Adverse Action Class members, *id.* at ¶¶ 38-39; (iii) $5,000 as a Class Service Representative Award for Plaintiff; (iv) $7,028.97, representing the actual cost of mailing notice to the class incurred to date, *id.* at ¶¶ 43-50; and (v) $1,583.94, representing the expected cost of mailing settlement checks to the class members, *id.* at ¶¶ 51-55.[1]  Class Counsel will then distribute these amounts to the class members accordingly.

---

[1] Class Counsel will seek its attorneys' fees and litigation-related expenses through a separate motion.

## II.    LEGAL STANDARD

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "[T]he court may approve [a class settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a proposed settlement meets Rule 23(e) standard, district courts in the Ninth Circuit must consider the standard set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

This requires balancing the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id*. at 1026; *see also Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL 995215, at *3 (N.D. Cal. Mar. 15, 2017) (quoting *Hanlon* factors).

"No single factor is the 'most significant,' " *Harper*, 2017 WL 995215 at *3 (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)), "and 'the decision to approve or reject a settlement is committed to the sound discretion of the trial judge.' " *Id*. at *3 (quoting *Hanlon*, 150 F.3d at 1026).

## III.    ARGUMENT

The Court should grant final approval of the proposed settlement. The *Hanlon* factors weigh in favor of approval, for both the compromise of the claims of the Disclosure

Class and the claims of the Adverse Action Class.  In short, the entire Disclosure Class will

receive fair monetary compensation for a disputed statutory claim, and the Adverse Action

Class members will receive twice the minimum amount they could obtain at trial, where

the ability to advance their claims to that stage of litigation is speculative.

### A.    The *Hanlon* factors weight in favor of approving the settlement of the claims of the Disclosure Class.

Plaintiff's § 1681b(b)(2) claim suffers from a particularly significant weakness

which justifies the economic compromise of their claims:  members of the Disclosure Class

will *only* recover if Café Valley's violation is determined to be *willful*.  Taking the relevant

case law into account, the following factors weigh in favor of approval of the compromise

of the Disclosure Class' § 1681b(b)(2) claim: (1) the strength of the plaintiff's case; (2) the

risk, expense, complexity, and likely duration of further litigation; (4) amount offered in

settlement; (6) the experience and views of counsel; and (8) the reaction of the class

members to the proposed settlement.

In *Syed*, the Ninth Circuit addressed whether including a liability waiver in a

background check consent form violated § 1681b(b)(2)'s requirement that the disclosure

be in a document consisting "solely" of the disclosure, and whether any such violation was

willful.  853 F.3d at 497.  The liability waiver read as follows:

> I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a third party without verification.

*Id*. at 497-98.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The *Syed* court first found that the FCRA "unambiguously requires a document that 'consists solely of the disclosure.'" *Id*. at 500 (quoting 15 U.S.C. § 1681b(b)(2)(A)(i)). It rejected the argument that there was an "implied exception" allowing the inclusion of a liability waiver, noting that "[a]n implied exception to an express statute is justifiable only when it *comports with the basic purpose of the statute*." *Id*. (quoting *Walker v. Fairbanks Inv. Co*., 268 F.2d 48, 53 (9th Cir. 1959)). In the court's view, a liability waiver "pulls the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights he must forego if he signs the document." *Id*. at 502. Thus, it found that the inclusion of the liability waiver violated § 1681b(b)(2), regardless of whether the disclosure was still clear and conspicuous. *Id*. at 502-03.

Turning to the issue of "willfulness," the *Syed* court's analysis was less instructive. The Supreme Court has held that a company cannot be liable for a willful violation if it acted in accordance with a reading of the FCRA that "was *not* objectively *unreasonable*." *Safeco*, 551 U.S. at 69 (emphasis added). Citing reasons similar to those supporting its finding of liability, the *Syed* court held that the "inclusion of a liability waiver … *comports with no reasonable interpretation* of 15 U.S.C. § 1681b(b)(2)(A)." 853 F.3d at 504 (emphasis added). "It [found that it] is possible to imagine an interpretation…that would be objectively unreasonable without rising to the level of recklessness [needed for a willful violation]." *Id*. at 505. But, ultimately, the violation was willful because "the term we are called upon to construe is not subject to a range of plausible interpretations." *Id*.

Here, the claim rests on Café Valley's form being in fine print; containing confusing language regarding "investigative consumer reports," when none were performed;

containing additional disclosures required in several different states; and requiring the

signatory to agree that a "fax," electronic, or photocopy would be valid as an original.  Doc.

27 at ¶¶ 22-31.  *Syed* pointed to *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d

719, 726–27 (7th Cir. 2008), in which the use of small font was not reckless disregard of

the FCRA's clear and conspicuous disclosure requirement.

The rest of the alleged defects pertain to the overinclusion of information, but none

necessarily rises to the same level of not "comport[ing] with the basic purpose of the

statute," as including a liability release within the disclosure, *Syed*, 853 F.3d at 501

(quoting *Walker*, 268 F.2d at 53), so it is unclear if a court would find they are permitted

as "implied exclusions" discussed in *Syed.*  Perhaps Congress impliedly excluded

information required to be disclosed by other laws, or, more importantly, perhaps

interpreting § 1681b(b)(2) in this manner does not exhibit recklessness.  The last alleged

defect—requiring the signatory to agree that a "fax," electronic, or photocopy would be

valid as an original—is the only one in which Café Valley seeks to enlarge its rights, as in

*Syed*, but seems less likely to draw the same concern or attention from the reader.

Whichever party prevailed, it would likely have a justifiable basis to appeal, which

would add to the duration of further litigation, particularly in the Ninth Circuit.  Also, in

Plaintiff's counsel's view, the Disclosure Class would not receive more than the statutory

minimum amount of $100, even if it prevailed at trial, because the violation is so technical

in nature.  The *Hanlon* factors weighing against approval—(2) the risk of maintaining class

action status throughout the trial and (4) the extent of discovery completed and the stage

of the proceedings—do not overcome the factors in favor of approval.   They merely highlight that the entire Disclosure Class faces this risk very soon.

The uncertainty over the likelihood of prevailing, the high likelihood of receiving only $100, and the fact that the Disclosure Class has not raised any objection or requested to be excluded—all in Plaintiff's counsel's view, justify a compromise of the claims.

**B.      The *Hanlon* factors weight in favor of approving the settlement of the claims of the Adverse Action Class.**

Plaintiff's case under § 1681b(b)(3) is stronger with respect to whether any such violation was willful, but it suffers from a different weakness that weighs in favor of approval, particularly in light of the fact that the Adverse Action Class will receive more than the minimum amount of statutory damages it could receive at trial.  The *Hanlon* factors weighing in favor of approval are: (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement; and (6) the experience and views of counsel.

As this violation involves adverse action being taken against employees, it seems easier to prove that Café Valley acted with a reckless disregard for the rights of the Adverse Action Class members.  Thus, the strength of Plaintiff's case weighs against settlement.  But it is offset by the risk that maintaining a class action against Café Valley on a disputed basis would not be manageable, to the point that decertification becomes a reality.  Early in the litigation, Café Valley contended (and the evidence persuaded Plaintiff's counsel) that determining from Café Valley's records whether an individual was terminated on the basis of their Universal background check would be long, expensive, and complex.

1
2
3
4
5
6

Plaintiff might be successful in proving that Café Valley committed a § 1681b(b)(3) violation against any particular class member, under a preponderance of the evidence standard, but Café Valley could just as persuasively argue that determining membership and liability for the Adverse Action Class would result in individualized mini-trials, and therefore should preclude certification.

7
8
9
10
11
12
13
14
15
16
17
18
19

In Plaintiff's counsel's view, the settlement is fair, adequate, and reasonable for the Adverse Action Class, because it provides $200 in compensation, twice the minimum amount that can be recovered for a willful violation.  Even if Plaintiff prevailed on behalf of the entire class at trial, there is no guarantee that the class would do better.  Jurors may find it peculiar to be awarding damages to class members *because* they have a criminal record and decide to award the minimum amount.  While additional discovery could reveal a particular type of record that made it possible to determine the precise membership of the Adverse Action Class, it seems unlikely in Plaintiff's counsel's view, given that Café Valley did not even have a written policy for much of the class period.

20
21
22
23
24
25
26
27
28

Moreover, the Parties delivered to over 90% of the potential class members a substantial written notice package, designed to get their attention and make it easy and free to submit a claim.  Yet, only 186 individuals submitted claims, and many of them apparently in error.  *See* Declaration at ¶¶ 24-25, 33.  This response by the class members adds credibility to Café Valley's belief that the true size of the class does not approach 250 individuals.   The reaction of the class members to the proposed settlement is still a neutral factor at the moment, since Class Counsel has not yet informed

1
2

claimants of Café Valley's challenges.  It is possible, but unlikely, that there are particular claimants who will genuinely dispute the challenge and find the settlement to be unfair.

3
4
5
6
7
8
9

On the whole, the *Hanlon* factors weigh in favor of settling the Adverse Action Class members' claims.  Given the risks involved in attempting to certify the class on an opposed basis and proceeding with litigation of their potentially individualized claims, this is a fair method of identifying class members and a fair, reasonable, and adequate amount of compensation for their claims.

10
11

**C.     The Court has previously found that the other terms of the proposed settlement fall within the range of reasonableness.**

12
13
14
15
16
17
18
19
20

The other terms of the agreement are fair, adequate, and reasonable.  Class Counsel's attorney's fees and costs will be determined by the Court pursuant to a separate motion, and the Court will make an independent assessment of whether to award fees, and if so, how much.  The amount which Café Valley agreed not to contest, $60,000, is not so substantial as to suggest that the Class Counsel has "bargained away something of value to the class," *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991), particularly in light of the fact that all class members will receive financial compensation.

21
22
23
24
25

The Class Service Representative Award of $5,000 is within the "typical[] range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  Given the absence of any objection and the fact that Plaintiff took significant risk in pursuing an award for thousands of others, this is a fair level of compensation.

26
27
28

## IV.    CONCLUSION

The Court should grant final class certification and approval of the class settlement

to allow the Disclosure Class and Adverse Action Class to receive their awards.

Respectfully submitted on January 29, 2018,

| | |
|---|---|
| By: s/ David N. McDevitt | By: s/ Robert K Jones |
| David N. McDevitt (030761) | Robert K Jones (016228) |
| Thompson Consumer Law Group, PLLC | Jackson Lewis, PC |
| 5235 E. Southern Ave., D106-618 | 2398 E. Camelback Road, Ste. 1060 |
| Mesa, AZ 85206 | Phoenix AZ 85016 |
| 602-845-5969 phone | Telephone: (602) 714-7059 |
| 866-317-2674 facsimile | Facsimile: (602) 714-7045 |
| dmcdevitt@consumerlawinfo.com | JonesR@jacksonlewis.com |
| Attorneys for Ms. Ogletree | Attorneys for Café Valley, Inc. |

## **CERTIFICATE OF SERVICE**

I certify that on January 29, 2018, I electronically filed the foregoing Joint Motion

for Final Approval Order and Judgment Approving Class Action Settlement with the clerk

of the U.S. District Court of Arizona, using the electronic case filing system of the court,

which will send notification of such filing to all counsel of record.

s/ David N. McDevitt
David N. McDevitt